UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

                                                       DECISION AND ORDER
        v.                                          01-CR-129A

AARON PIKE, GREGORY PATTISON,
MATTHEW HARRISON, AND
RICHARD C. ALICEA,

                  Defendants.

---

## BACKGROUND

The government seeks to introduce certain statements by defendant Gregory Pattison made to an individual named Mickey Darling, wherein Pattison told Darling that he killed Richard Alicea, Jr., and that co-defendant Aaron Pike paid him to do it. Defendant Pike objects to the admissibility of that evidence arguing that it violates his rights under the confrontation clause because he cannot cross-examine Greg Pattison (his co-defendant) regarding the statements.

The Court requested briefing on the issue and heard testimony from Mickey Darling outside the presence of the jury. Darling testified that he first saw Pattison in jail on or about May 26, 2001. He and Pattison had been acquainted for several years. When he saw Pattison, Darling asked if Pattison was aware of

1

Richard Alicea, Jr.'s murder. Darling asked because he had just learned of the murder from a television news report. Pattison replied "Yes, I was there" and told Darling that he would talk about it later.

The next day, Darling again saw Pattison. The two had a conversation about researching an issue in the prison law library. The issue about the murders then came up again. Pattison told Darling that he shot Johnny Houston and Houston's eye "popped out." He then shot Richard Alicea, Jr. ("Richie"). Pattison told Darling that after the shooting, he wanted to steal Richie's money and jewelry, but he was afraid that he might be caught with the evidence. Darling testified that this was a friendly conversation, and that Pattison had no reason to believe that Darling would repeat the confession to authorities. Pattison told Darling that he killed Richie because he owed Richie money for drugs, and because Aaron Pike had asked him to do it. Specifically, Pattison told Darling that Aaron Pike said Richie had done something "bad" and that the money owed to Richie was really Pike's money. Pike told Pattison that if he killed Richie, Pike would wipe out the drug debt, provide Pattison with five pounds of marijuana, and Pattison could take Richie's place in the drug conspiracy.

Pike argues that the portion of the testimony that implicates him should be excluded because he does not have an opportunity to cross-examine Pattison about his statements to Darling. For the reasons stated, the Court finds

that the statements are admissible under Rule 804(b)(3) and the confrontation clause of the Sixth Amendment.

**DISCUSSION**

In Crawford v. Washington, 541 U.S. 36 (2004), the Supreme Court held that the confrontation clause bars the admission of *testimonial* statements made by a witness outside of court, unless the witness is unavailable and the defendant had a previous opportunity to cross examine the witness.  For Crawford to apply, however, the out-of-court statement must be *testimonial* in nature. United States v. Saget, 377 F.3d 223, 226-30 (2d Cir. 2004), cert. denied, 543 U.S. 1079 (2005).  Testimonial statements "involve a declarant's knowing responses to structured questioning in an investigative environment or courtroom setting where the declarant would reasonably expect that his or her responses might be used in future judicial proceedings."  Id. at 228.  In Saget, the Second Circuit considered the effect of Crawford on nontestimonial statements.  The Court held that if the out-of-court statement is *not* testimonial, then the Sixth Amendment's confrontation clause does not bar its admission into evidence so long as the statement falls within a firmly rooted hearsay exception or contains particularized guaranties of trustworthiness.  Id. at 230 (applying Ohio v. Roberts, 448 U.S. 56 (1980), to nontestimonial out-of-court statements in the wake of Crawford).  In other words, with respect to nontestimonial out-of-court statements,

3

the Second Circuit held that the pre-Crawford analysis set forth in the Supreme Court's Ohio v. Roberts decision continues to apply, and the confrontation clause does not bar admission so long as the statement falls within a firmly rooted hearsay exception or there exist particularized guarantees of trustworthiness.

The statements at issue in this case are clearly not testimonial in nature. They were not made in an investigative environment or in a courtroom setting or under circumstances where the declarant (Greg Pattison) would reasonably expect that his statements would be used against him in a future judicial proceeding. See Saget, 377 F.3d at 228. In fact, Darling testified that the confession occurred in the context of a friendly conversation, and Pattison had no reason to believe that Darling would repeat his statement to the authorities. Because the statements are nontestimonial, the confrontation clause does not bar their admission as long as the statements fall within a firmly rooted hearsay exception or contain particularized guarantees of trustworthiness and are admissible under the rules of evidence.

In United States v. Matthews, 20 F.3d 538 (2d Cir. 1994), the Second Circuit addressed the admissibility of a co-defendant's statements incriminating himself and another defendant. The Court stated that:

> [I]f the statement is made to a person whom the declarant believes is an ally rather than a law enforcement official, and if the circumstances surrounding the portion of the statement that inculpates the defendant provide no reason to suspect that the

4

> inculpatory portion is any less trustworthy than the part of the statement that directly incriminates the declarant, the trustworthiness of the portion that inculpates the defendant may well be sufficiently established that its admission does not violate the [c]onfrontation [c]lause.

Id. at 546.  Ultimately, the court found that the statements at issue in Matthews did not violate Matthews's rights under the confrontation clause because

> [t]he statements were not made to law enforcement authorities, were not made in response to questioning, and were not made in a coercive atmosphere.  Rather, they were volunteered by [the defendant] to his girlfriend, an intimate and confidante, in the private recesses of their home.  There were no coercive pressures, and there was no attempt to curry favor with authorities.  Indeed, when he made the statement to [his girlfriend], [the defendant] had no reason to expect that his admission would ever be disclosed to the authorities.

Id.  The court also found it significant that the statements did not reflect any attempt by the declarant to shift culpability to his co-defendant, Matthews.

More recently, in Saget, the Second Circuit reaffirmed the Matthews decision and held that a statement made by the declarant to a confidential informant which implicated both the declarant and his co-defendant was admissible pursuant to the reasoning set forth in Matthews.  Like Matthews, the Court found that the statement was made to someone whom the declarant believed was a friend or ally and the declarant was not aware that the individual was cooperating with the government.  The statements were made in the context of discussing other personal issues and the declarant had no reason to suspect

5

that the statements would be used against him later.  There was no indication that the declarant was attempting to shift culpability from himself to the other individual, and the statements equally inculpated both the declarant and the defendant.  Under those circumstances, the Court found that the confrontation clause did not bar admissibility.  However, the Court went on to explain that the statement must also be admissible under a hearsay exception.  In that case, the Court found that the statement was admissible under Rule 804(b)(3) as a statement against the declarant's penal interest.

In this case, the statements at issue are also admissible under Rule 804(b)(3).  A statement is admissible under Rule 804(b)(3) "only if the district court determines that a reasonable person in the declarant's shoes would perceive the statement as detrimental to his or her own penal interest." Sagat, 377 F.3d at 231.  In Williamson v. United States, 512 U.S. 594, 601 (1994), the Supreme Court explained that "the question under Rule 804(b)(3) is always whether the statement was sufficiently against the declarant's penal interest 'that a reasonable person in the declarant's position would not have made the statement unless believing it to be true,' and this question can only be answered in light of all of the surrounding circumstances."  Furthermore, the rule permits admission of only those statements or remarks within the confession that are individually self-inculpatory. Id. at. 599.

The circumstances of this case support admission of the statements implicating Pike in the murders and drug conspiracy.  At the time that those statements were made, they were so far contrary to Pattison's interest that a reasonable person in Pattison's position would not have made the statements unless he believed them to be true.  Pattison admitted to committing a double homicide.  He also admitted that he did so to wipe away a drug debt, to obtain more drugs from Pike, and to further his own role in the drug conspiracy.

The statements also contain sufficient guarantees of trustworthiness as required by <u>Matthews</u> and <u>Saget</u>.  Like <u>Matthews</u> and <u>Saget</u>, the statements implicating Pike were made to an acquaintance, in the context of a friendly conversation.  The circumstances surrounding that portion of the confession that inculpates Pike provide no reason to suspect that the inculpatory portion is any less trustworthy than that portion of the confession that simply implicates Pattison.  Pattison made no attempt to minimize his role in the homicide or to shift the blame to Pike.  In fact, Pattison admitted that he committed the murders so that he could further his own drug dealing with Pike.  The statements that inculpate Pike equally inculpate Pattison.  Therefore, the Court finds that the circumstances surrounding the statements provide sufficient guarantees of trustworthiness as required by the Sixth Amendment.  Further, the Court notes that the confession as relayed by

Pattison to Darling is consistent with other evidence already admitted during the trial, thereby further supporting its trustworthiness.[1]

Pike argues that the statements are not reliable because "everyone knows that jail is full of rats," that Darling himself was a known "rat", and that Pattison would have known not to trust Darling.  If Pike believes that Darling completely fabricated the entire confession because he is a "rat" and Pattison would never have trusted him, Pike can explore that upon cross-examination of Darling.  However, that issue goes to Darling's credibility, not Pattison's.  The concern of the confrontation clause is whether the person who is not available for cross-examination (here, Pattison) had any reason to fabricate that portion of the statement that implicates his co-defendant.  For the reasons stated above, there is no reason to believe that the portion of the confession that implicates Pike is any less trustworthy that the portion that implicates Pattison.  Therefore, the statements about Pike's role in the murder and drug conspiracy are admissible under Rule 804(b)(3) and are not barred by the Sixth Amendment.

---

[1] Pattison's confession to Darling also contained specific details about the murders that had not yet been disclosed to the public, such as the fact that the bullet had exited through Johnny Houston's eye, and the fact that the perpetrator had rolled down the back seat window to exit because the child safety locks were on the car.

**CONCLUSION**

For the reasons stated, Pike's motion to preclude admission of Pattison's statements to Darling, as they relate to him, is denied.

IT IS SO ORDERED.

           /s/ Richard J. Arcara
           HONORABLE RICHARD J. ARCARA
           CHIEF JUDGE
           UNITED STATES DISTRICT COURT

DATED: March 6, 2006